# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| DENNY RAY ANDERSON, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | Case No. 1:13-cv-01734-TWP-MJD | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## ENTRY GRANTING PETITIONER'S MOTION TO VACATE CONVICTION AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on Petitioner Denny Ray Anderson's ("Anderson") Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") (Dkt. 1). Anderson filed the present motion alleging that his guilty plea was not "intelligent, knowing, or voluntary in violation of" the Due Process Clause and that his trial counsel rendered constitutionally ineffective assistance by permitting him to plead guilty despite knowledge of his mental health problems. *Id.* Following an evidentiary hearing, and after considering the record in both this case and the underlying criminal action, the Court makes findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the Court concludes that it had bona fide reasons to doubt Anderson's competence during his criminal proceedings and thus, should have ordered a competency hearing. Anderson's Motion is **granted,** and the Judgment entered in Case No. 1:11-cr-00201-TWP-TAB is **vacated.** The United States shall have thirty (30) days from the date of this Entry to notify the Court of its intent

---

[1] Certain issues of fact cannot be resolved in this case without determining which version of the pivotal events was more credible. In making this and other determinations as to contested issues, the Court has considered the customary factors associated with credibility–*e.g.,* demeanor, detail, consistency, opportunity to observe or perceive the events testified to, etc. It has not relied solely on the number of witnesses who related a particular event or on any other single factor.

to retry Anderson in the criminal case.  If the United States elects to retry Anderson, he may raise the question of his competence to stand trial at that time and request a hearing on the issue.

## I.  LEGAL STANDARD

The Court must grant a § 2255 motion when a petitioner's "sentence was imposed in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations."  *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Relief under § 2255 is available only if an error is "constitutional, jurisdictional, or is a fundamental defect which inherently results in a complete miscarriage of justice."  *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quotations omitted).

## II.  FINDINGS OF FACT

### A.  Procedural Background

On October 19, 2011, Anderson was charged by Indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  Anderson was initially represented by an Indiana Federal Community Defender counsel and beginning February 24, 2012 he was represented by CJA counsel Jessie A. Cook ("Cook").

Anderson was scheduled for trial by jury on August 27, 2012; however, on August 16, 2012, he filed a Petition to Enter a Plea of Guilty.  (Crim. Dkt. 50).[2] That same day the parties filed a fully executed Plea Agreement (Crim. Dkt. 51). The Plea Agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), stated that Anderson would plead guilty to the charge alleged in the Indictment and be sentenced to the statutory minimum term of 180 months' imprisonment.  The

---

[2] Citations to "Crim. Dkt. __" are to Anderson's criminal proceedings, Case No. 1:11-cr-00201-TWP-TAB.

Plea Agreement further provided that in exchange for concessions made by the United States, Anderson expressly waived his right to a direct appeal of the conviction and sentence imposed. He did not, however, waive his right to collaterally attack the conviction and sentence via 28 U.S.C. § 2255. The Court vacated the trial and set the change of plea hearing for August 27, 2012.

**B.**     **The Change of Plea Hearing**

Anderson appeared before the Court for his change of plea hearing on August 27, 2012. At the beginning of the hearing, Anderson and his counsel were asked to come to the lectern for the plea colloquy. Anderson was wearing shackles on his ankles and his hands were cuffed. On the lectern is a microphone which the speaker must utilize for the benefit of the court reporter. When Anderson stepped away from the middle of the lectern, the Court stated, "Come right here. Where are you going, Mr. Anderson?" The court reporter then recorded someone (not Anderson) as saying "ready to run around for a while" at the same time as Anderson moved closer to the microphone and center of the lectern. The Court responded, "Okay. You have to stay in here." (Crim. Dkt. 75 at 4.) During the hearing, the following colloquy took place:

> COURT: Have you been treated recently for any mental illness or addictions to alcohol or narcotic drugs of any kind?
>
> DEFENDANT: I'm on psychotropic drugs right now.
>
> COURT: Okay. What's your diagnosis?
>
> DEFENDANT: Paranoid schizophrenia and a few other things. I don't know exactly everything.
>
> COURT: So, are you currently under the influence of any drugs or medication?
>
> DEFENDANT: Medication.
>
> COURT: Okay. Does your medication affect your ability to understand today's proceedings?

3

DEFENDANT: Not that I know of, Your Honor.

COURT: Okay. So, right now you're thinking clearly, and you understand what's going on?

DEFENDANT: Right. I mean, as good as I can, yeah.

(Crim. Dkt. 75 at 5.)

Also, during the hearing, the Court asked if Anderson understood that his guilty plea would deprive him of valuable civil rights:

COURT: Mr. Anderson, do you understand that the offense to which you are pleading guilty, because it's a felony offense, if the plea is accepted, you will be adjudged guilty of that offense, and this adjudication may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm. Do you understand?

DEFENDANT: Yeah.

COURT: Okay. Knowing –

DEFENDANT: That's pretty good.

COURT: I'm sorry?

DEFENDANT: That's pretty good.

COURT: Knowing all of these factors, do you still wish to enter into this plea of guilty?

DEFENDANT: Yes.

*Id.* at 9-10. At the end of the hearing the Court accepted Anderson's plea, adjudged him guilty, ordered a presentence investigation report (the "PSR") and scheduled a sentencing hearing.

**C.**     **The Sentencing Hearing**

The final PSR was filed by the United States Probation officer on October 29, 2012. Under the section titled Mental and Emotional Health, the report stated:

4

> The defendant has been diagnosed with antisocial personality disorder and hyperkinetic syndrome through Wishard Hospital. He states he has also been diagnosed with bipolar disorder, schizophrenia, chronic depression and attention deficit hyperactivity disorder (ADHD). He has reportedly been prescribed Ritalin for ADHD, thorazine for schizophrenia, and Artane for side effects of his other medication. Medical notes from IU Medical Center indicate when he was released from prison in 2011, he was prescribed thorazine for anxiety and Artane, although it does not state the reason for this medication, and was referred to Midtown Mental Health. Although requested, no records were received from Midtown Mental Health.

(Crim. Dkt. 56 at 17). On November 1, 2012, the sentencing hearing was conducted. Anderson received a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. He was an Armed Career Criminal under 18 U.S.C. § 924(e). His total offense level was 31 and his criminal history category was VI (based on both his criminal history points and his status as an Armed Career Criminal). His guideline range was 188 to 235 months' imprisonment. The Court, in conformity with the Plea Agreement, sentenced Anderson to a term of imprisonment of 180 months (the statutory minimum) to be followed by five years of supervised release. Anderson was also fined $500.00 and assessed the mandatory assessment of $100.00. No competency hearing was ever requested or held. Judgment of conviction was entered on November 5, 2012.

**D.     Post-Conviction Proceedings**

On October 28, 2013, Anderson filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Crim. Dkt. 82). In his § 2255 motion, Anderson argued that his plea was not intelligent, knowing, or voluntary because he was suffering mental problems and his attorney was ineffective for failing to seek a competency examination prior to allowing him to plead guilty. Anderson's arguments were rejected, his § 2255 motion was denied without a hearing and final judgment was entered. Anderson appealed. The Seventh Circuit Court of Appeals reversed, stating: "[b]ecause the district court lacked a full picture of Anderson's mental health, its finding

5

that Anderson had the capacity to plead guilty rests on a flawed factual foundation that must be explored in a hearing." (Dkt. 37 at 14.) The Seventh Circuit remanded this action for an evidentiary hearing to determine whether Anderson had the capacity to be sentenced and to enter a knowing and voluntary plea. (*Id*. at 17.) On July 24, 2018, Anderson filed a Prehearing Brief (Dkt. 84) which set forth two grounds for relief: (1) Anderson was denied his due process right to plead guilty while competent, and (2) trial counsel rendered ineffective assistance by failing to seek a competency evaluation and failing to request a competency hearing.

**E.      The Evidentiary Hearing**

An evidentiary hearing was held on August 2 and 3, 2018. Anderson was represented by by counsel Gregory M. Boyle, Joshua M. Parker, and Reanne Zheng.[3] The United States appeared by Assistant United States Attorneys Brian L. Reitz and Steven D. DeBrota. Anderson presented several witnesses–three fact witnesses: attorney's Bobbie Sierzputowski, Lindsay P. Schneider and his trial counsel Jessie A. Cook, and, and two expert witnesses: Dr. Bhushan Agharkar and Professor Jeffrey Urdangen. The Court also viewed the videotaped testimony of Robert Dugan ("Dugan"), taken by deposition because he was an unavailable fact witness. The United States did not present any witnesses.[4]

Cook has been a criminal defense attorney since 1980 and has represented a large number of clients with mental health issues or serious mental health issues. She met with Anderson at least

---

[3] The Court is grateful for Jenner & Block attorneys'–Barry Levenstam, Gregory M. Boyle, Joshua M. Parker, and Reanne Zheng–representation of Anderson. Jenner & Block represented Anderson before the Seventh Circuit and graciously agreed to continue its pro bono appointment on remand. Counsels' thorough preparation was of great benefit to the Court.

[4] The Court denied the Government's motion to call Anderson as a witness finding the Government's failure to disclose Anderson as a witness until two days prior to the evidentiary hearing was without substantial justification and would prejudice Anderson. (Dkt. 88.)

twice a month and spoke with him over the telephone, regarding less substantive matters. She was able to discuss all aspects of the case with him, and she "had no reason to disbelieve what he told [her] or to question his ability to understand and respond to the factual allegations." (Dkt. 108 at 89, 90. 97.) She was aware that Anderson was prescribed Thorazine and that he frequently refused to take it. Anderson informed Cook that sometimes "he would pocket the medication and give it to other inmates." Cook was able to work with Anderson regardless and she never suspected that he was incompetent. *Id*. Anderson did not appear to be psychotic and if she "had thought he was not competent, [she] would have asked for an evaluation." (Dkt. 108 at 101.) Cook never asked for a competency evaluation or hearing.

Sierzputowski and Schneider had previously represented Anderson in state court matters. They each interacted with Anderson around the time the charges were filed in 2011 or during the 2012 proceedings. Dugan was confined in the same cell block as Anderson for over a year, following the November 2012 sentencing. All three were aware that Anderson suffers from mental illness and during their interactions with him, Anderson was usually pleasant, "good natured" and "humorous." They each observed that Anderson often found it difficult to remain focused.

Dr. Agharkar is a medical doctor board certified in adult and forensic psychiatry. After reviewing Anderson's medical, mental health, and administration records, conducting a clinical examination interview of Anderson, reviewing the change of plea and sentencing transcripts, observing the testimonies of all the fact witnesses, and viewing the deposition videotape of Dugan, Dr. Agharkar determined that there were "serious red flags" as to Anderson's competence that warranted further inquiry at the time he pled guilty in 2012. He also explained the "powerfully sedating" effects of Thorazine and the effects of intermittently taking this medication.

Anderson's standard of care expert, Urdangen, is a clinical professor at the Northwestern Pritzker School of Law and director of the Bluhm Legal Clinic's Center for Criminal Defense and has extensive criminal trial experience. Urdangen noted that Cook was aware of several red flags as to Anderson's competence, including his serious mental health issues and diagnoses, his potent psychotropic medication regimen, and issues with inconsistently taking those medications. In his opinion, trial counsel was deficient in her representation of Anderson and her conduct fell below an objective level of reasonableness for two reasons: (1) she failed to adequately investigate Anderson's competence; and (2) she failed to request a competency hearing despite her awareness of facts that should have given her a bona fide reason to doubt Anderson's competence.

Anderson's mental health progress notes from the jail were admitted into evidence at the hearing. (Tr. Exhibit 1.) In the 19 days prior to the hearing, Anderson did not refuse his Thorazine and his last refusal occurred on August 8, 2012. (*See* Tr. Exhibit. 1, pp. 47, 48.) Ten days before the change of plea hearing, Anderson had an appropriate affect, coherent thought form, appropriate thought content, an intact memory, and average intelligence. (Tr. Exhibit 1, p. 180.) Ten days after the hearing, a mental health progress report indicates that Anderson was functioning well. (Tr. Exhibit 1, p. 179.) In the days leading up to the sentencing hearing, including the two days before the hearing, Anderson refused Thorazine. (Tr. Exhibit 1, pp.20-36.)

### III. DISCUSSION AND CONCLUSIONS OF LAW

Anderson argues that his due process rights were violated by this Court's failure to hold a competency hearing *sua sponte* during the 2012 proceedings because this Court had facts before it that should have given it a bona fide reason to doubt his competence. He also argues that his trial counsel rendered ineffective assistance, violating the Sixth Amendment, by failing to ask the

Court to conduct a competency hearing at the time he pled guilty, despite having evidence before her that should have given her a bona fide reason to doubt his competence.

In response, the Government asserts that although Anderson suffers from mental illness, that fact alone does not mean that he is incompetent to stand trial and Anderson only needed to be able to follow the proceedings and provide the information that his lawyer needs to conduct an adequate defense, and to participate in critical decisions. During the 2012 proceedings, the contemporaneous participants uniformly believed that Anderson was competent. The Government asserts that Cook, as Anderson's lawyer, was best-positioned to know the extent that he understood the proceedings and her belief that his mental illness did not "impact his ability to understand the case" is sufficient evidence to deny the motion for relief. The Government argues the evidence shows that Anderson was competent and if this Court were to find otherwise, it would "be the first court to find Anderson incompetent – despite Anderson having being [sic] a defendant on 19 separate occasions over 30 years time." (*See* Dkt. 100 at 3.)

"A criminal defendant may not be tried unless he is competent, and he may not ... plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran,* 509 U.S. 389, 396 (1993) (citation omitted) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 468 (1938)). This requirement "has a modest aim: It seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel." *Godinez,* 509 U.S. at 402. The United States Supreme Court has "approved a test of incompetence which seeks to ascertain whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings

against him.'" *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

Further, "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope*, 420 U.S. at 181. "Where the evidence before a trial court raises a bona fide doubt as to the defendant's competency, due process requires the court *sua sponte* to order a competency hearing." *Burt v. Uchtman*, 422 F.3d 557, 564 (7th Cir. 2005) (*citing Pate v. Robinson*, 383 U.S. 375, 385 (1966)). *See also* 18 U.S.C. § 4241. To safeguard this constitutional guarantee, a court must, on either party's motion or *sua sponte,* order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a).

There is no prejudice component to this due process inquiry. "[T]he analysis for the due process claim focuses only on events that happened in court that should have alerted the trial judge to the need for a competency hearing." *Burt,* 422 F.3d at 570. Thus, if this Court finds there was a "bona fide reason to doubt" Anderson's competence based on what the Court should have known during his 2012 criminal proceedings, then the failure to further evaluate Anderson's competence violated his due process rights.

Whether a competency hearing is warranted is necessarily an individualized determination. *McManus v. Neal*, 779 F.3d 634, 656 (7th Cir. 2015). "Relevant factors include any evidence of irrational behavior, the defendant's demeanor in court, and any medical opinions on the defendant's competency to stand trial." *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009). The Seventh

Circuit has also considered evidence that a defendant: (a) has been diagnosed with a severe psychiatric illness, *see, e.g., Burt*, 422 F.3d at 564-65; *McManus,* 779 F.3d at 657; (b) had been receiving large dosages of psychotropic medications, *see, e.g., Burt,* 422 F.3d at 565-66; *McManus,* 779 F.3d at 657, and (c) possesses substandard intelligence. *See, e.g., Newman v. Harrington*, 726 F.3d 921, 930 (7th Cir. 2013); *Burt*, 422 F.3d at 565-66.

## A.    The Change of Plea Hearing

As noted above, during his change of plea hearing on August 27, 2012, Anderson responded to the Court's questions regarding his mental health and advised that he was "on psychotropic drugs right now" for "[p]aranoid schizophrenia and a few other things. I don't know exactly everything." (Crim. Dkt. 75 at 5.)  When asked whether he was thinking clearly and understood what was going on, he responded: "Right. I mean, as good as I can, yeah." *Id.*  Later, when asked whether he "fully underst[ood] th[e] plea  agreement," Anderson stated, "Yes, to the best of my ability, I  do." *Id.* at 16.  These qualified answers were reasonably understood to reflect Anderson's attempt to be precise.

Anderson's physical action of stepping away from the middle of the lectern was not unusual or "peculiar."  At no time was Anderson running around or wandering around the courtroom.  He simply stepped away from the lectern, a situation that had to be corrected in order to support the court reporter's transcription.  Defendants are often nervous and confused about where they should stand and remain during the plea colloquy.  The Court's directions were understood by those present in the courtroom and Anderson's actions were not uncommon.

Later in the hearing, Anderson was asked by this Court if he understood that his guilty plea would deprive him of valuable civil rights, Anderson responded "Yeah … That's pretty good." (*Id.*

at 9-10.)  This response was understood to be a glib remark from Anderson given the fact that he had not enjoyed the civil rights that had just been referenced for years.  For example, Anderson was convicted of felony burglary in Marion County, Indiana, in 1980 at the age of 22.  (*See* Crim. Dkt. 56. at 6, ¶ 32.)  His glib response was not alarming or indicative of misunderstanding as he was just told that he would no longer have the right to own a firearm, when he was facing charges for being a felon in possession of a firearm.

The undersigned takes every change of plea hearing seriously.  Anderson's plea hearing was no exception.  As noted by the witnesses at the evidentiary hearing, Anderson's personality is friendly and talkative and that is how he presented at the change of plea hearing.  The Court observed no peculiar behaviors or equivocation in his statements or answers to raise a "red flag".  However, "it is nevertheless true that judges must depend to some extent on counsel to bring issues into focus." *Drope*, 420 U.S. at 176–77.  At the change of plea hearing, the Court had only a general knowledge of Anderson's mental health condition and no knowledge of his other conditions, including what medications he had been prescribed, how the medications affected his mental functioning, or his irregularities in taking prescribed medications; and his counsel did not raise any such concerns with the Court.  The Court concludes that it simply did not have sufficient information to question the purported competency of Anderson at the time of the change of plea hearing.  Consistent with this conclusion is that Anderson's experienced trial counsel, Jesse Cook, testified that she believed Anderson "sounded rational and able to understand what was going on during the plea colloquy."  (Dkt. 108 at 93.)

**B.**     **Presentence Investigation Report And Psychiatric Diagnoses**

Anderson's PSR was filed with restrictions in the criminal case on October 29, 2012.

(Crim. Dkt. 56.)  For the first time, the Court became aware of the extent of Anderson's mental health history. The PRS reported that Anderson had been diagnosed with schizophrenia, antisocial personality disorder, hyperkinetic syndrome, bipolar disorder, chronic depression, and attention deficit hyperactivity disorder.  (*Id*. at 17, ¶ 78.) The PSR listed Thorazine and Tegretol among the medications he had been prescribed.  (*Id*. at 16-17, ¶¶ 77, 78.)  Thorazine is an anti-psychotic medication. Tegretol is "used to prevent and control seizures which is sometimes used to treat bipolar disorder and schizophrenia." *Anderson v. United States*, 865 F.3d 914, 918 (7th Cir. 2017).

Upon seeing the names of the medications listed, the Court had bono fide concerns.  The evidence adduced at the hearing demonstrates that those concerns were legitimate.  For example, Dr. Agharkar testified that Thorazine is a "powerfully sedating" antipsychotic and because of this "heavy" side effect, it is not prescribed "so much anymore."  (Dkt. 109 at 25.)  Either  dosage "can really subdue a person, to the point where they're not necessarily thinking very  straight."  *Id.* at 26.  While Thorazine treats outward manifestations of psychosis, such as hallucinations and delusions, it "doesn't do so well" with treating cognitive symptoms such as problems with memory and concentration; nor does it do well in treating disorganized thinking because of its sedative effects. *Id.* at 25.  Other side effects of Thorazine include impaired concentration in judgment and thinking.  *Id*. at 27. Dr. Agharkar explained that intermittently taking Thorazine both decreases its effectiveness in treating the symptoms of schizophrenia and amplifies its side effects, including sedation. *Id.* at 28-29.

During the 2012 proceedings, Anderson was also prescribed Tegretol to treat his seizure disorder that resulted from past head injuries. *Id*. at 44.  Dr. Agharkar explained that Tegretol is also prescribed as a mood stabilizer for bipolar disorder and has a "major" sedating effect "just like

Thorazine"; it dampens brain activity to stop seizures from occurring. (*Id.* at 45.) The PSR also noted that the Probation Officer requested, but did not receive, relevant mental health records from Midtown Mental Health, where Anderson was a patient in 2011. (Crim. Dkt. 56 at 17, ¶ 78.) The Probation Officer also requested, but did not receive, relevant mental health records from Progress House and Richmond State Hospital. (Crim. Dkt. 56 at 17-18, ¶ 87.)

The PSR reflects Anderson's long history of substance abuse. (*Id.* ¶¶ 79-87.) It also highlighted Anderson's educational difficulties, stating that he ranked near the bottom of his high school class and that Anderson attributed his poor academic performance to his mental health issues. *Id.* at 18, ¶ 88. The PSR noted that Anderson reported he had been unable to obtain his medications since he was released earlier that year but was "thinking more clearly" since he had been confined in Marion County Jail. *Id.* at 4, ¶ 16.

## C.    **The Sentencing Hearing**

Anderson's mental health problems were discussed during the November 1, 2012, sentencing hearing. When this Court asked Anderson's trial counsel why this Court should accept a sentence slightly below the United States Sentencing Guidelines range, trial counsel responded that "[i]t looks like [Anderson] has been afflicted with some very serious mental health problems since he was quite young, including diagnoses of paranoid schizophrenia, all of which requires medication." (Crim. Dkt 72 at 16.) Counsel then described Anderson's "long history of mental health problems," noting that "he doesn't have a history of having received serious treatment for these problems." (*Id.* at 18.) In addition, trial counsel reported that Anderson takes "some really serious psychotropic medication, including Thorazine in large dosage amounts that the DOC recommended for him." ( *Id.* at 19.)

Trial counsel also explained to this Court that periodically during her representation, Anderson did not receive his required medications:

> Even in the time that I have spent with him, when he's moved from one cell block to another – which seems to be a problem in the jail here, they move him, and then for a period of time he doesn't have the right medication. And when I come to see him, he can't focus on what we're talking about.
>
> Now, after he's been in the new cell block and they've got his medication back, he's a whole lot better. But, it's pretty clear to me that when he's not medicated, he has an extremely difficult time of conforming his behavior to what, you know, the Court would expect.

(*Id*. at 18.)

The prosecution acknowledged Anderson's mental health problems as well, telling this Court that his "mental health issues" did not surprise the officers who arrested him "at all" because "their immediate reaction upon making contact with Mr. Anderson" was that "something was amiss." *Id.* at 23. Indeed, the prosecution agreed that a below-Guidelines 180-month sentence was appropriate because of Anderson's "current state and his current age and his current mental health." ( *Id.*)

After sentencing Anderson, this Court asked him "[a]re they [Marion County Jail officials] giving you your medications?" and Anderson responded:

> I have problems getting my medication. They just started charging money for – I don't have the money to pay for it anyway, but you know what I'm saying? But they will start charging. You know, I mean, it's just one day they will give me part of it, you know what I mean? And then the next time I might not get it all. Like, this morning they come to give my meds, and they didn't have all my meds for me. You know what I'm saying? I'm thinking – –.

(*Id*. at 31-32.)

**D.**     **The Ruling**

At issue in this case is "the fundamental principle that it is unjust to punish a person who lacks the mental capacity to understand the proceedings against him and participate in his own defense." *McManus*, 779 F.3d at 656.  Given the information the Court had at the sentencing hearing, this action should have been suspended until such time as an evaluation could be made. *See Drope*, 420 U.S. at 181.  This is true even though the Court did not have this information during the change of plea hearing and had previously found:

> … the defendant is fully competent and capable of entering an informed plea, that the defendant was aware of the nature of the charges and the consequences of the plea, that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact, which contained each of the essential elements of the offense.

(Crim. Dkt. 72 at 3.)  A defendant's competency can be called into question at every stage in the criminal proceedings.  *See Burt*, 422 F.3d at 569 (7th Cir. 2005) ("trial court should have sua sponte ordered a renewed competency hearing." *Id.* at 566); *Timberlake v. Davis*, 409 F.3d 819, 823 (7th Cir. 2005) (defendant examined twice before trial and once during post-conviction proceedings and found competent all three times); *Young v. Walls*, 311 F.3d 846, 848 (7th Cir. 2002) (defendant found competent three times before trial, and post-conviction court held separate competency hearing to evaluate his competency while on psychotropic medication).

Here, further evaluation was necessary because competency is not static and additional information was needed for this Court to make a reasonable independent judgment about Anderson's competency.  The Supreme Court has recognized,

> There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.

That they are difficult to evaluate is suggested by the varying opinions trained psychiatrists can entertain on the same facts.

*Drope*, 420 U.S. at 180. Despite these challenges, prior to the completion of the sentencing hearing, this Court had a "bona fide reason to doubt" Anderson's competence and should have ordered an evaluation. This doubt was created by the knowledge of Anderson's severe psychiatric disorders and that he was prescribed psychotropic medications that he did not always receive.

First, Anderson suffered from severe psychiatric disorders. He had long been diagnosed with multiple "severe psychiatric illness[es]" and even one such illness "can suffice" to establish "'reasonable cause to believe'" a defendant has been rendered mentally incompetent. *United States v. Grimes*, 173 F.3d 634, 635-36 (7th Cir. 1999) (citation omitted). The PSR alerted this Court to Anderson's long history of very serious mental health problems, including diagnoses of paranoid schizophrenia, antisocial personality disorder, hyperkinetic syndrome, bipolar disorder, chronic depression, and attention deficit hyperactivity disorder. As the Seventh Circuit explained, Anderson's diagnoses "should have alerted the court to the possibility of a competence issue, even if his medical history standing alone did not trigger the need for an evaluation." *Anderson*, 865 F.3d at 920.

Second, this Court also knew that Anderson was prescribed large dosages of potent psychotropic medication. Anderson had been prescribed multiple psychotropic drugs, including Thorazine (an antipsychotic), Tegretol, and Ritalin (a stimulant), during his court proceedings. The Seventh Circuit's mandate noted that "[a] defendant's use of such potent medications can, by itself, create a substantial doubt about a defendant's fitness to plead guilty." *Anderson*, 865 F.3d at 920 (internal quotation marks and citation omitted).

Further, both trial counsel and Anderson told this Court that there were times when the Marion County Jail did not provide Anderson with his medications and that he did not take all the medications he was supposed to take the morning of sentencing. To reiterate, the Court had reasonable cause to believe that Anderson did not always take his proscribed psychotropic medication and, that even when he was properly administered and accepted his medications, the potential side effects of those medications would not have necessarily resulted in competence. Accordingly, Anderson's severe psychiatric diagnoses as well as his medical regimen – and the fact that he did not always take his medications – was a bono fide reason to order a competency hearing.

Two additional points are worth addressing. First, this Court should not have relied on Anderson's past statements that he understood the proceedings during the sentencing (or change of plea) hearing. "Anderson's belief about the effects of his medication is inadequate assurance that he was capable of entering a plea: A person grappling with a serious mental illness or under the influence of psychotropic drugs cannot be assumed to have a reliable understanding of his faculties." *Anderson v. United States,* Case 15-2683 (7th Cir. Aug. 2, 2017). *See also Pitsonbarger v. Gramley*, 141 F.3d 728, 736 (7th Cir. 1998) ("the charge that a defendant was under the influence of psychotropic drugs at or near the time of trial is a serious one").

The fact that Anderson was told of the consequences of pleading guilty is irrelevant. The Seventh Circuit has explained, "[t]he observation that the court admonished [petitioner] of the consequences of pleading guilty is irrelevant to his claim of incompetency. If [petitioner] was in fact unable to understand the proceedings, that the court informed him of the consequences of a guilty plea would make no difference." *Burt*, 422 F.3d at 565. This caselaw is consistent with Dr.

Agharkar's testimony that an individual's ability to answer closed-ended, yes or no questions does not mean that the person does not have a thought disorder. In addition, when asked by this Court whether Anderson could still have been incompetent the day of the change of plea hearing if Anderson was pleasant with a normal affect and no active psychosis, Dr. Agharkar said yes because "those are outward kind of masking or social behaviors" that do not shed light on Anderson's ability "to weigh and deliberate options and hav[e] a deeper understanding about what he's really agreeing to." (Dkt. 109 at 158.)

Second, the United States resists this conclusion arguing that if this Court finds Anderson incompetent, it would be the first court to do so – despite Anderson having been a defendant on 19 separate occasions over 30 years. (*See* Dkt. 100 at 3.) This argument is not persuasive because the United States has not offered any evidence that a judicial officer ever applied the applicable legal standard in finding that Anderson was competent. Without a record that the judges presiding over Anderson's prior criminal cases "made a reasonable independent judgment about [defendant's] competency," the fact that Anderson has a horrible and extensive criminal history does not reflect he is competent. *See McManus*, 779 F.3d at 658. Further, the United States' argument is based on the premise that Anderson's mental health and medications' effect on his competency is static. "The Supreme Court, however, has emphasized that a defendant's competency must be evaluated at the time of trial and that his condition can change as proceedings unfold." *Burt*, 422 F.3d at 568 ("'Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.'" *Id.* (*quoting Drope*, 420 U.S. at 181)).

Again, under these circumstances, this Court, *sua sponte,* should have held a competency hearing. *Holmes v. Buss*, 506 F.3d 576, 581 (7th Cir. 2007) ("[T]he judge is the expert on what mental capabilities the litigant needs in order to be able to assist in the conduct of the litigation."). The failure to do so violated Anderson's due process rights.

This holding makes it unnecessary for the Court to address Anderson's remaining claims which rest on the theory of ineffective assistance of counsel.

E.     **Courtroom Advocacy and Demeanor**

This Entry reflects the Court's acknowledgment that it erred in failing to hold a competency hearing in Anderson's criminal case prior to sentencing him and entering final judgment. This case has given the Court (and hopefully, the defense bar) the opportunity to reflect on best practices to ensure all criminal defendants' constitutional rights are upheld. It is in this spirit of reflection that the performance of counsel for the United States in litigating this action pursuant to 28 U.S.C. § 2255 is addressed.

Anderson's **pro bono** counsel was thoroughly prepared, cordial and provided excellent advocacy in this matter. But on several occasions during the evidentiary hearing, the courtroom demeanor of the Government attorney was inappropriate and unprofessional. Counsel was reminded several times "to please not interrupt witnesses in the middle of their answers and allow the witness to complete their answer before you begin the next question." (Dkt. 109 at 162.) The Government attorney did not heed the Court's advice and continued to argue with the witnesses.[5]

---

[5] The Court:     So listen, Mr. DeBrota. Just relax.
Mr. DeBrota:     I will.
The Court:     Just relax. You need to take a breath and count to ten.
Mr. DeBrota:     Okay.
The Court:     You really do.
Mr. DeBrota:     I'll do that, Your Honor

This Court has high expectations for all attorneys, especially attorneys who regularly practice in the Southern District of Indiana. Ignoring the judicial officer's instructions, and showing hostility towards the witnesses, adverse counsel, and proceedings generally is not appropriate advocacy. Instead, counsel should be mindful to accept the following principals as true: 1) criminal defendants have the right to seek redress for the violation of their constitutional rights pursuant to 28 U.S.C. § 2255 and 2) criminal defendants are entitled to due process even if they are guilty. Even in the throes of advocacy, an attitude that reflects the honor of representing the United States and supporting the Constitution is required.

---

| The Court: | And just let the witness – we need to be respectful of each other. We're not in front of a jury. You're just in front of me. |
| Mr. DeBrota: | I gotcha. |
| The Court: | And it's not impressing me at all, so – |
| Mr. DeBrota: | Okay. |
| The Court: | -- just slow down and let's be cordial and let the witnesses explain their answers, please. |

Dkt. 109 at 199. But once again, Mr. DeBrota failed to ask direct questions of the witness to solicit their testimony.

| Mr. DeBrota: | So that was -- we have the conversation we talked about. We have the lectern movement. What is the third thing that you're seeing from the record of that hearing that we should consider here as one of these warning signs that you think Ms. Cook didn't pay attention to? |
| Mr. Urdangen: | I would appreciate seeing the transcript. You're asking me what the third thing was. |
| Mr. DeBrota: | You also heard her testify yesterday; right? Did you hear something else? |
| THE COURT: | Mr. DeBrota, you are saying "third thing." Tell him what third thing you're referring to. |
| MR. DeBrota: | I don't think there is one. I'd like him to just say that. Basically, what's happened is -- I read his report, and it talks about what happened that day. These are the two things. If there's something else, I want to hear about it so I can deal with it. I believe these were the only two, and my point being, okay, well, we've explained both of them. If there's something else, I need to hear it. But what he's doing is expanding off his report. That's not fair to us. |
| THE COURT: | Well, he can expand off his report. That's why he's here and that's why you have an opportunity to cross-examine. |

Dkt.109. at 200-201. Even after being corrected again, the conduct continued. The Court was required to strike Mr. DeBrota's commentary. *See id.* at 203. Mr. DeBrota was ultimately admonished to refrain from making narrative comments, arguing with witness, asking compound questions, and interrupting witnesses. *Id*. at 231-232.

# IV. <u>CONCLUSION</u>

To be clear, the Court declines to determine whether Anderson was in fact competent at the time he pled guilty and was sentenced. Instead, the Court's decision is based on the fact that this Court had bono fide reasons to doubt Anderson's competency and should have held a competency hearing before entering final judgment. *Pate*, 383 U.S. at 387 (discussing importance of a contemporaneous competency hearing). Accordingly, Anderson's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is **GRANTED** because his due process rights were violated. The Judgment in Case No. 1:11-cr-00201-TWP-TAB-1 is **vacated** and the case is reopened, subject to further proceedings. Judgment consistent with this Entry shall now issue. The United States shall have thirty (30) days from the date of this Entry in which to notify this Court of its intention to prosecute Anderson. At that time, Anderson's present competency can be addressed. This outcome is consistent with the Supreme Court's view that there are inherent difficulties in making a *nunc pro tunc* determination of competency under the most favorable circumstances. *See Pate*, 383 U.S., at 386-387; *Dusky*, 362 U.S., at 403; *Drope*, 420 U.S. at 183.

The Clerk shall also **enter this Entry on the docket in the underlying criminal action,** Case No. 1:11-cr-00201-TWP-TAB-1. The Motion to Vacate filed in the underlying criminal action (Crim. Dkt. 82) shall also be **terminated**.

       **SO ORDERED.**

Date:  12/19/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

22

DISTRIBUTION:

Barry Levenstam
JENNER & BLOCK
blevenstam@jenner.com

Gregory M. Boyle
JENNER & BLOCK LLP
gboyle@jenner.com

Reanne Zheng
JENNER & BLOCK LLP
rzheng@jenner.com

Steven D. DeBrota
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
steve.debrota@usdoj.gov

Brian L. Reitz
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
brian.reitz@usdoj.gov